IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | No. 4:05-CR-25(2) |
| | : | |
| v. | : | Judge Jones |
| | : | |
| DEREK W. SMITH, | : | |
| | : | |
| Defendant. | : | |

**ORDER**

**December 8, 2006**

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:**

Pending before the Court are two Motions filed by Defendant Derek Smith ("Defendant" or "Smith"). On July 6, 2006, Defendant filed a Motion to Dismiss the Indictment for Failure to Afford Defendant an Opportunity to Testify in Front of the Grand Jury ("Motion to Dismiss for Failure to Afford"). (Rec. Doc. 127). On July 13, 2006, Defendant filed a Motion to Dismiss for Lack of Federal Jurisdiction ("Motion to Dismiss for Lack of Jurisdiction"). (Rec. Doc. 133). For the reasons that follow, the Motions will be denied.

**FACTUAL BACKGROUND/PROCEDURAL HISTORY**:

On January 13, 2005, the grand jury returned a four-count Indictment against co-defendants Derek Smith and Jessica Heddings ("Heddings"). (Rec. Doc. 24).

The Indictment charged both Defendants with one Count of Conspiracy to Possess with Intent to Distribute and to Distribute More Than Five Hundred (500) Grams of Cocaine, in violation of 21 U.S.C. § 846, and three Counts of Possession with Intent to Distribute Cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

On June 21, 2006, the Grand Jury returned a six-count Superceding Indictment against Smith. (Rec. Doc. 111). The Superceding Indictment charges Smith with the same four Counts enumerated above. However, the Superceding Indictment also contains two additional counts. Count 5 charges Smith with Knowingly Using Communications Facilities, Namely a Telephone, to Commit the Commission of Acts Constituting Felonies, Namely Distribution and Possession with Intent to Distribute Cocaine, in violation of 21 U.S.C. § 843(b) and 18 U.S.C. § 2. Count 6 charges Smith with Knowingly Opening, Leasing, Renting, Using, and Maintaining a Space for the Purpose of Distributing Cocaine, in violation of 21 U.S.C. § 856 and 18 U.S.C. § 2.

On July 6, 2006, Defendant filed the instant Motion to Dismiss for Failure to Afford. (Rec. Doc. 127). On July 13, 2006, Defendant filed the instant Motion to Dismiss for Lack of Jurisdiction. (Rec. Doc. 133).

On October 3, 2006, Defendant entered into a plea agreement with the

Government whereby he agreed to enter a conditional guilty plea to Count 5 of the Superceding Indictment, but he retained the right to await this Court's disposition on the two instant Motions and to appeal this Court's rulings on said Motions, as well as one other previously disposed of Motion. (Rec. Doc. 153). On October 10, 2006, Defendant pleaded guilty to Count 5 of the Superceding Indictment and orally motioned to withdraw two other Motions that had been pending before this Court, his Motion to Strike Alias in Caption and Body of Indictment (doc. 124) and his Motion to Suppress Certain Recorded Telephone Conversations (doc. 134). (Rec. Doc. 159). On same date, this Court granted Defendant's oral motions. (Rec. Doc. 161).

Accordingly, Defendant's Motion to Dismiss for Failure to Afford (doc. 127) and Motion to Dismiss for Lack of Jurisdiction (doc. 133) remain before this Court. As they have been fully briefed by the parties, they are therefore ripe for our review.

**DISCUSSION**:

**A.     Defendant's Motion to Dismiss for Lack of Jurisdiction (doc. 133)**

We begin with Defendant's Motion to Dismiss for Lack of Jurisdiction (doc. 133) as our disposition of it may impact our disposition of his Motion to Dismiss for Failure to Afford (doc. 127). Pursuant to FED. R. CRIM. P. 12(b)(3), a court

may hear a claim that the Indictment fails to invoke the court's jurisdiction at any point in time while the case is pending.  Accordingly, we go to the merits of Defendant's Motion to Dismiss for Lack of Jurisdiction.  (Rec. Doc. 133).

In his Motion to Dismiss for Lack of Jurisdiction, Defendant alleges that this Court lacks jurisdiction to hear this case, that the Controlled Substance Act ("CSA"), 21 U.S.C. § 841 et seq., is unconstitutional as applied to Smith, and that, accordingly, the First Superseding Indictment (doc. 111) returned against him must be dismissed.[1]  (Rec. Doc. 133).  Defendant's Brief in Support of the Motion argues[2] that this Court lacks jurisdiction because Smith's alleged violations of the

---

[1] The Court initially notes that we appreciate defense counsel's candid explanation as to the circumstances that led to the filing of Defendant's Motion to Dismiss for Lack of Jurisdiction (doc. 133), as well as defense counsel's explanation as to the sequencing of the supporting brief's contents.  (See Rec. Doc. 141 at 1-2 n.1, 2-4).

With regard to the circumstances that led to the filing of the instant Motion, this Court wishes to make two points clear.  First, as this Court has no knowledge as to circumstances surrounding Mr. Benchino's arrest and prosecution, we will not speculate as to whether or how his case lacked the requisite federal "components" that the instant case allegedly contains.  Rather, our foci are whether 21 U.S.C. § 841, et seq., is unconstitutional as applied to Defendant, and whether we have jurisdiction over the instant matter.

Second, in light of defense counsel's representations, the Court understands the difficult position in which CJA attorneys currently find themselves with regard to this issue, and joins defense counsel's hope that the Court's ruling on this matter will help Smith, as well as other defendants with his views, understand why this Court, indeed, has jurisdiction in cases involving alleged violations of the Controlled Substance Act, 21 U.S.C. § 841, et seq.

[2] The Court recognizes that the legal analysis in this brief supporting Defendant's position was largely drafted by Defendant and we agree with the Government's assessment thereof: "[w]hatever the legal authorities cited by Smith may say about the state of homicide law on federal enclaves at the time of the War of 1812, these cases emphatically do not undermine . . . this nation's current drug laws."  (Rec. Doc. 142 at 7).

CSA occurred wholly intrastate, in the Commonwealth of Pennsylvania, and not on federal lands.[3]  (See Rec. Doc. 141 at 4-5, 7).

The Government counters by arguing that the CSA is constitutional given Congress's express power to regulate interstate commerce.  (See Rec. Doc. 142). The Government cites the Congressional findings associated with the CSA and precedent to support its argument that even wholly intrastate activities have a substantial impact on interstate commerce.  (Rec. Doc. 142 at 5-6).

We note that the text of the Commerce Clause of the United States Constitution is the logical starting point in our analysis of Defendant's Motion to Dismiss for Lack of Jurisdiction.  The Commerce Clause provides:

> The Congress shall have Power . . . To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes . . . .

U.S. CONST. art. I, § 8, clause cl. 2.

As the Government aptly indicated, when enacting the CSA, the Congress invoked its express power under the Commerce Clause and made detailed and comprehensive findings regarding the devastating effect of illegal drug trade on

---

[3] Although it appears undisputed that Defendant's alleged criminal activities occurred exclusively in the Commonwealth of Pennsylvania (see generally doc. 142 at 6), we recognize that Counts 5 and 6 of the Indictment charge that those offenses took place in the Middle District of Pennsylvania "and elsewhere." (Rec. Doc. 111).  Thus, the geographic location(s) of all of Defendant's alleged criminal activities apparently remain to be determined.  Nevertheless, for the purposes of the instant Motion, we assume arguendo that Defendant's assertion is correct.

interstate commerce. See 21 U.S.C. § 801. Congress's findings included a finding as to the effect of local drug distribution, such as that at issue here: "Local distribution and possession of controlled substances contribute to swelling the interstate traffic in such substances." 21 U.S.C. § 801(4).

In light of the Commerce Clause's plain language and Congress's findings as to the impact of local drug distribution, this Court understands why defense counsel "has been unable to locate any reported cases which uphold the challenge to a federal drug prosecution on the basis that the conduct is clearly intrastate . . . ." (Rec. Doc. 141 at 5). Moreover, although the Government's contention that "[w]ithout exception, every federal court which has considered this matter has held that Congress has the Constitutional power to protect the public by banning all forms of illegal drug dealing, including local, regional, national, and international drug trafficking" (doc. 142 at 6) is slightly overstated (see doc. 146 at 2-3), many cases, including some of those upon which the Government relies, lead this Court to the conclusion that, indeed, the CSA is constitutional as applied to Smith, and thus, this Court has jurisdiction over the instant matter.

Although we recognize that no precedent on point is binding on this Court,[4]

---

[4] As defense counsel indicated (doc. 146 at 2), none of the cases upon which the Government relied are binding on this Court. First, Gonzales v. Raich, __ U.S. __, 125 S.Ct. 2195 (2005), is not binding because although it held that locally cultivated marijuana was properly the subject of federal jurisdiction, the marijuana growers' argument that the CSA was

we are guided by recent Supreme Court analysis of the constitutionality of CSA as applied to the facts of another case, in which the Court considered the well-established, generalized jurisprudence on the Commerce Clause before holding that locally cultivated marijuana was properly the subject of federal jurisdiction. See Gonzales v. Raich, __ U.S. __, 125 S.Ct. 2195 (2005). As outlined in United States v. Lopez, 514 U.S. 549 (1995), and reiterated in United States v. Morrison, 529 U.S. 598 (2000), and Raich, 125 S.Ct. at 2205, the Commerce Clause authorizes Congress to undertake three general categories of regulation: 1) the channels of interstate commerce; 2) the instrumentalities of interstate commerce, as well as persons and things in interstate commerce; and 3) activities that substantially affect interstate commerce. Id. In Raich, the Court considered the third category, the same at issue here, and reiterated that "[o]ur case law firmly establishes Congress' power to regulate purely local activities that are part of an economic 'class of activities' that have a substantial effect on interstate commerce." Id. (citing United States v. Perez, 402 U.S. 146 (1971); Wickard v. Filburn, 317 U.S. 111 (1942)).

---

unconstitutional as applied differs from Smith's argument: the growers argued that "as applied to the interstate manufacture and possession of marijuana for medical purposes pursuant to California law . . . ," the CSA was unconstitutional. Id. at 2204. Smith can rely on no such state law as justification for his alleged activities. Second, the Court of Appeals for the Third Circuit, the only Circuit Court whose decisions are binding on this Court, has not yet ruled on the issue at hand.

Recognizing that decisions from our Sister Circuits focusing on the constitutionality of federal drug trafficking crimes are not binding, this Court, nevertheless, finds the jurisprudence very persuasive, and weighing strongly in favor of the Government's position that the CSA is constitutional as applied to Smith and that this Court has jurisdiction over the instant matter. Indeed, federal courts have been uniform in upholding the constitutionality of federal drug trafficking statutes. See, e.g., United States v. Tisor, 96 F.3d 370, 375 (9th Cir. 1996); United States v. Lamear, 417 F.2d 626, 627 (8th Cir. 1969); United States v. Cerrito, 413 F.2d 1270, 1271 (7th Cir. 1969); White v. United States, 395 F.2d 5, 7 (1st Cir. 1968).

The reasoning of the Court of Appeals for the Ninth Circuit in United States v. Montes-Zarate, 552 F.2d 1330, 1330 (9th Cir. 1977), is wholly applicable to the disposition of the instant Motion. As the Ninth Circuit explained in Montes-Zarate:

> Appellant claims that the district court did not have jurisdiction over the fourth count of the indictment because no interstate nexus was established. It is unclear whether the appellant is challenging the constitutionality of 21 U.S.C. § 841(a), or whether the appellant is contending that proof of an interstate nexus is required in order to establish jurisdiction of the subject matter. In either event, the contention fails. We agree with the other circuits that have considered the problem that the statute is constitutional and that no proof of interstate nexus is required in order to establish jurisdiction. We adopt the reasoning of the Fourth Circuit in United States v. Atkinson,

513 F.2d 38, 39-40 (1975):

> "Initially the defendant suggests the unconstitutionality of the Act in its application here. The point is that no federal authority existed for the punishment of a wholly intrastate possession and distribution. The position is not tenable. Congressional findings on which the legislation rested disclosed that intrastate possession, distribution and sale of drugs such as heroin directly and injuriously effected the introduction of them into other States to the injury of the public health and welfare there. 21 U.S.C. § 801, 812. Thus the statutory definition and proscription of transactions of 'controlled substances' . . . entirely within a State is altogether constitutional." United States v. Lopez, 459 F.2d 949 (5th Cir. 1972) . . . .

Montes-Zarate, 552 F.2d at 1330.

Even assuming arguendo that Defendant's alleged criminal activities occurred in the Commonwealth of Pennsylvania and not on federal lands, Defendant's argument, that this Court lacks jurisdiction because the CSA as applied to him is unconstitutional, is unavailing. As the Government aptly noted, the Congressional findings on which Congress based its invocation of the Commerce Clause, as well as the well-established precedent that the Commerce Clause supports Congress regulation of wholly intrastate activities that have a substantial impact on interstate commerce, see Raich, 125 S.Ct. at 2205, and that drug trafficking is one such activity, see Montes-Zarate, 552 F.2d at 1330, lead this Court to conclude that it has jurisdiction and that, as applied to Smith, all of the relevant CSA provisions are constitutional. Accordingly, the Defendant's

9

challenge to the constitutionality of the CSA and contention that this Court lacks jurisdiction to hear this case fail.  The Motion to Dismiss for Lack of Jurisdiction (doc. 133) shall, therefore, be denied.

**B.      Defendant's Motion to Dismiss for Failure to Afford (doc. 127)**

In his Motion to Dismiss for Failure to Afford (doc. 127), Defendant argues two alleged shortcomings in the Government's seeking of the Superceding Indictment (doc. 111).  First, Defendant argues that the Government used the grand jury for an improper purpose.  Second, Defendant argues that the Government wrongfully failed to provided Defendant an opportunity to appear before the grand jury.

In his Brief in Support of the aforementioned Motion, Defendant initially argues that the grand jury was used for an improper purpose because the Superceding Indictment (doc. 111) returned against only him, rather than against him and his co-defendant Heddings, was sought in retaliation for his failure to plead guilty to the original Indictment (doc. 24).  (Rec. Doc. 128 at 2-3). Defendant supports this argument by noting that the Government knew at the time of the original Indictment (doc. 24) all of the circumstances required to support the additional charges in the Superceding Indictment (doc. 111).  (Rec. Doc. 128 at 3). Defendant's Brief in Support also argues in the alternative, that Defendant should

have been provided a so-called "target letter," which has allegedly provided other defendants notice of, and the opportunity to present testimony before, the grand jury. (Rec. Doc. 128 at 6).

The Government counters by arguing that a strong presumption of regularity attaches to the actions of a grand jury and that all of its actions related thereto were well within its prosecutorial discretion. (Rec. Doc. 145 at 6). The Government also indicates that Defendant was provided notice of the Government's intent to bring additional charges if no plea agreement were reached. (Rec. Doc. 145 at 1, 5, 8). Thus, the Government argues that Defendant faces an extremely high burden of proof in seeking to dismiss the Superceding Indictment. (Rec. Doc. 145 at 6). Finally, the Government argues that Defendant's alleged support for his two alternative arguments can not sustain his burden of proof for a number of reasons. (Rec. Doc. 145 at 7).

We begin by considering the jurisprudence on courts' review of grand jury proceedings. The Government and Defendant agree that a presumption of regularity attaches to grand jury activities. See, e.g., United States v. R Enterprises, Inc., 498 U.S. 292, 300 (1991). Indeed, as the Third Circuit has indicated, "[i]n the absence of a contrary factual showing, the grand jury proceedings are entitled to a presumptive of lawfulness and regularity." In re

Grand Jury Proceedings, 632 F.2d 1033, 1041 (3d Cir. 1980).

However, courts retain supervisory authority to dismiss indictments. See Bank of Nova Scotia v. United States, 487 U.S. 2550, 256 (1988). This "supervisory power can be used to dismiss an indictment because of misconduct before the grand jury, at least where that misconduct amounts to a violation of one of those 'few, clear rules which were carefully drafted and approved by this Court and Congress to ensure the integrity of the grand jury's functions.'" United States v. Williams, 504 U.S. 36, 46 (1992) (quoting United States v. Mechanik, 475 U.S. 66, 74 (1986)). Nevertheless, the Court made very clear:

> We did not hold in Bank of Nova Scotia, however, that the courts' supervisory power could be used, not merely as a means of enforcing or vindicating legally compelled standard of prosecutorial conduct before the grand jury, but as a means of prescribing those standards of prosecutorial conduct in the first instance – just as it may be used as a means of establishing standards of prosecutorial conduct before the courts themselves . . . . Because the grand jury is an institution separate from the courts, over whose functioning the courts do not preside, we think it clear that, as a general matter at least, no such 'supervisory' judicial authority exists . . . .

Williams, 504 U.S. at 46-47 (emphasis in original).

Thus, we consider whether any specific authority supports Defendant's specific allegations of prosecutorial misconduct. First, we consider Defendant's argument that the Government improperly used a grand jury when it sought a Superceding Indictment (doc. 111) following Defendant's rejection of the

Government's plea offers. (Rec. Doc. 128 at 2-3). As the Government aptly noted, in <u>Bordenkircher v. Hayes</u>, 434 U.S. 357 (1978), the Supreme Court held that "the course of conduct engaged in by the prosecutor in this case, which no more than openly presented the defendant with the unpleasant alternatives of forgoing trial or facing charges on which he was plainly subject to prosecution, did not violate the Due Process Clause of the Fourteenth Amendment." <u>Id.</u> at 365. Defendant notes that the Supreme Court so limited its holding to the facts of the case before it, but has suggested no facts that distinguish the facts of <u>Hayes</u> from the instant matter.[5]

---

[5] Although in his argument as to his alleged right to present exculpatory evidence to the grand jury, Defendant refused to concede that he was given notice of the Government's intention to seek a Superceding Indictment, he then argued on the assumption that such notice was provided. (<u>See</u> Rec. Doc. 147 at 2-3). Moreover, other portions of Defendant's Reply Brief appear to concede that such notice had been given. For example, when arguing that the Government sought the Superceding Indictment for Defendant's failure to accept a plea offer, Defendant states:

> In the instant case the government has admitted that the only reason for seeking the superceding indictment against Smith was Smith's refusal to succumb to the government's <u>threats</u> and enter a plea of guilty.

(Rec. Doc. 147 at 6) (emphasis added). Defendant's argument continued:

> [a] fair reading of this decision [<u>Hayes</u>] makes it clear that the court is not giving blanket condemnation [sic] to prosecutors attempting to rewrite the Constitution by removing therefrom the presumption of innocence and the right to trial by reindicting individuals who are unwilling to abandon their Constitutional rights and enter a plea agreement.

(Rec. Doc. 147 at 6). Thus, implicit in Defendant's argument that the Government used the grand jury for an improper purpose appears to be the concession that the Government attempted to induce Defendant to cede his right to trial by telling him that if he did not plead guilty, additional charges could be brought.
    Accordingly, this Court finds that Defendant was aware that a potential consequence of his failure to plead guilty could be the Government seeking a Superceding Indictment, and thus,

Rather, Defendant argues:

> [a] fair reading of this decision [Hayes] makes it clear that the court is not giving blanket condemnation [sic] to prosecutors attempting to rewrite the Constitution by removing therefrom the presumption of innocence and the right to trial by reindicting individuals who are unwilling to abandon their Constitutional rights and enter a plea agreement.[6]

(Rec. Doc. 147 at 6). In fact, the Supreme Court's reasoning in Hayes explicitly rejects Defendant's argument. The Court reasoned:

> To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort, and for an agent of the State to pursue a course of action whose objection is to penalize a person's reliance on his legal rights is 'patently unconstitutional.' But in the 'give-and-take' of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer.

Hayes, 434 U.S. at 363. The Court also stated: "While confronting a defendant with the risk of more severe punishment clearly may have a 'discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable' – and permissible – 'attribute of any legitimate system which tolerates and encourages the negotiation of pleas.'" Id. at 364.

We also have guidance from the Court of Appeals for the Third Circuit on

---

neither Hayes nor Oliver are distinguishable on this fact.
   Moreover, Defendant's musing about whether such plea negotiations with co-defendants are Giglio material (doc. 147 at 4-5) is not relevant to this inquiry and, therefore, not considered here.

[6] The Court notes that Defendant also argued the reasoning in Hayes' dissent, but we are bound by its majority decision.

14

this issue. Relying on Hayes, as well as Sister Circuits' decisions, in United States v. Oliver, 787 F.2d 124 (3d Cir. 1986), the Court of Appeals for the Third Circuit held that no prosecutorial vindictiveness was present when a defendant, who was informed that failure to cooperate in a plea bargaining process with the Philadelphia police would result in federal prosecution, was subsequently indicted by federal authorities after failing to cooperate. Id. at 126. As with Hayes, the defendant has offered no facts that distinguish Oliver from the instant matter, and, as indicated in our note above, we find none.

In accordance with Hayes and Oliver, we hold that the Government did not improperly use the grand jury when it sought a Superceding Indictment (doc. 111) following Defendant's rejection of the Government's plea offers in the instant matter. Thus, we will not dismiss the Superceding Indictment on those grounds.

Next, we consider Defendant's argument that he should have been afforded the opportunity to offer exculpatory evidence to the grand jury. (Rec. Doc. 128 at 6). Following consideration of this issue, the Supreme Court held that "courts have no authority to prescribe such a duty [upon prosecutors to disclose exculpatory evidence to the grand jury] pursuant to their inherent supervisory authority over their own proceedings."[7] Williams, 504 U.S. at 55. In light of this Supreme Court

---

[7] We note Defendant's apparent concession on this point. (See Rec. Doc. 147 at 3).

holding, we find that the Government was not required to afford Defendant the opportunity to appear before the grand jury from which the Government obtained the Superceding Indictment.[8]  Thus, we will not dismiss the Superceding Indictment on these grounds either.

Accordingly, Defendant's Motion to Dismiss for Failure to Afford (doc. 127) will be denied.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Defendant's Motion to Dismiss Indictment (doc. 127) is **DENIED**.

2. Defendant's Motion to Dismiss for Lack of Jurisdiction (doc. 133) is **DENIED**.

s/ John E. Jones III
John E. Jones III
United States District Judge

---

[8] Given our holding that the Government was not required to provide Defendant the opportunity to present exculpatory evidence to the grand jury, his argument that he did not receive a so-called "target letter," presenting him the opportunity to appear and present testimony to the grand jury, that other defendants have alleged received (doc. 128 at 6) is irrelevant.